IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

| | |
|---|---|
| PROPERTIES OF THE VILLAGES, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> FEDERAL TRADE COMMISSION, <br><br> *Defendant*. | Case No. 5:24-cv-000316-TJC-PRL |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR STAY OF EFFECTIVE DATE AND PRELIMINARY INJUNCTION**

Not all agency rulemaking is the same. Procedural rules governing an agency's own operations differ significantly from substantive rules binding private parties. Because substantive rules carry the force of law, Congress must affirmatively grant an agency such power. This case concerns what kind of rulemaking Congress conferred by granting the FTC authority to "[f]rom time to time classify corporations and . . . to make rules and regulations." 15 U.S.C. § 46(g). The FTC claims that Section 6(g) of the FTC Act grants it the broad authority to ban entire categories of conduct as "unfair methods of competition" under Section 5. But the FTC ignores the surrounding text, structure, and history, which all confirm this provision's limited scope. Even assuming the FTC has substantive rulemaking authority generally, it lacks clear authority to issue the Non-Compete Rule, which alters the federal-state balance, involves a major question of political and economic significance, and applies retroactively. If any doubt

remains, the constitutional avoidance canon counsels against adopting the FTC's interpretation. Further, POV's irreparable harm, the balance of the equities, and the public interest all weigh in favor of preserving the status quo.

I.  **The FTC Act Does Not Grant The Commission Substantive Rulemaking Authority For Unfair Methods Of Competition.**

Nothing in Section 6(g) authorizes the Commission to promulgate substantive rules on unfair methods of competition. Nor does the broader FTC Act. The FTC argues that Section 6(g) has no "textual limit on the type of rules the Commission may promulgate," Opp. 15, which is not only incorrect, but also gets the relevant inquiry backwards. Agencies only have the powers conferred by Congress, not *all* powers unless expressly precluded. *See La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).

In its Opposition, the FTC first inverts the order of Section 6(g), Opp. 6, and later omits the words "classify corporations" entirely, *id*. at 15. But the phrase "make rules and regulations" must be read with the preceding text *in the same provision* and "a view to [its] place in the overall statutory scheme." *West Virginia v. EPA*, 597 U.S. 697, 721 (2022). Here, the procedural nature of "classify[ing] corporations" informs the type of rulemaking included in Section 6(g).[1] This provision is therefore best read as a "'housekeeping statute,' authorizing what the APA terms 'rules of agency organization procedure or practice' as opposed to 'substantive rules.'" *Ryan LLC v.*

---

[1] *See* Gregory J. Werden, The Federal Trade Commission Lacks Rulemaking Authority to Enforce the Prohibition on Unfair Methods of Competition, Mercatus Ctr. (May 30, 2023), https://perma.cc/HNU7-HXPX (explaining the origin of Section 6(g) including a contemporaneous statement by Rep. Horace M. Towner (R-IA) that the rules envisioned were only "with regard to the classification of corporations").

2

*FTC*, 2024 WL 3297524, at *8 (N.D. Tex. July 3, 2024) (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 310 (1979)).[2] In contrast, when Congress conferred substantive rulemaking authority for unfair and deceptive trade practices, it did so explicitly. *See* 15 U.S.C. § 57a. It is implausible that Congress would have buried broad substantive rulemaking authority to enforce Section 5 in the second half of an ancillary provision in Section 6 addressing the FTC's ministerial and reporting powers.[3]

Without sufficient support in the statutory text, the FTC resorts to the legislative history of subsequent amendments and congressional silence. The *Ryan* court correctly rejected these arguments as a "piecemeal attempt to confer rulemaking authority that Congress has not affirmatively granted." 2024 WL 3297524, at *10. Congressional acquiescence requires "overwhelming evidence"; stray floor remarks and a single lower court decision do not suffice.[4] Even if scattered statements could prove acquiescence, the legislative history includes the statement of Rep. Broyhill, a member of the Magnuson-Moss Act's Conference Committee, that he did "not believe that the FTC has any such authority" because "[a]ntitrust rules would obviously have a far

---

[2] The *Ryan* court also correctly held that "the lack of a penalty included with Section 6(g) supports that such provision encompasses only housekeeping rules—not substantive rulemaking power." 2024 WL 3297524, at *8; *see also* Mot. 14–15.

[3] Further, Section 5 itself does not contemplate substantive rulemaking and instead sets out detailed procedures for case-by-case adjudications, which the FTC seeks to circumvent with its Rule. *See* 15 U.S.C. § 45(b)–(n); *AMG Cap. Mgmt., LLC v. Fed. Trade Comm'n*, 593 U.S. 67, 78 (2021) ("Nor is it likely that Congress, without mentioning the matter, would have granted the Commission authority so readily to circumvent its traditional § 5 administrative proceedings.")

[4] *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 170 n.5 (2001); *see Advoc. Health Care Network v. Stapleton*, 581 U.S. 468, 481 (2017) ("[S]cattered floor statements by individual lawmakers ... [are] among the least illuminating forms of legislative history." (cleaned up)); *Jama v. ICE*, 543 U.S. 335, 349–52 (2005) (insufficient judicial consensus for ratification).

3

more pervasive effect than rules defining unfair or deceptive acts or practices" and "the new bill does not deal with the antitrust laws." 120 Cong. Rec. 41407 (1974). The FTC also cannot explain why "from 1978 until the enactment of the Non-Compete Rule"—after *National Petroleum Refiners Ass'n v. FTC*, 482 F.2d 672 (D.C. Cir. 1973)—"the Commission did not promulgate a single *substantive* rule under Section 6(g)." *Ryan*, 2024 WL 3297524, at *9. The FTC argues that its powers "are not lost by being allowed to lie dormant." Opp. 17 (quoting *United States v. Morton Salt Co.*, 338 U.S. 632 (1950)). But the failure to exercise power is "significant in determining whether such power was actually conferred." *FTC v. Bunte Bros.*, 312 U.S. 349, 351–52 (1941).

## II.    The FTC Lacks Clear Statutory Authority To Issue The Rule.

Even if the FTC has substantive rulemaking power, the FTC has not identified any clear statutory authority to issue the Non-Compete Rule.[5]

*1. Federalism.* The FTC misapprehends the federalism canon's clear-statement requirement, which demands evidence of Congress's specific intent to alter the federal-state balance, not merely intent to permit an agency to issue regulations generally. *See Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). The Rule unquestionably shifts that balance. Although the FTC argues that States share general antitrust enforcement authority with the federal government, that has no bearing on whether the Non-Compete Rule reshapes the federal-state balance here. Neither the FTC nor the federal government has a history of regulating non-compete agreements, which traditionally

---

[5] The FTC does not (and cannot) argue that this Court must defer to its interpretation of the FTC Act. *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024).

have been in the States' domain. Mot. 21. Even if "the Rule does not limit States' ability to *further* regulate non-competes," Opp. 29 (emphasis added), the Rule casts aside 46 States' existing laws permitting reasonable non-compete agreements.

*2. Major Questions Doctrine.* Contrary to the FTC's view, courts regularly apply the major questions doctrine to actions that go "to the heart of the [agency's] mandate." *Compare* Opp. 22, *with West Virginia*, 597 U.S. 697 (EPA and carbon dioxide power plant emissions); *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302 (2014) (EPA and greenhouse gas emissions); *see also Biden v. Nebraska*, 600 U.S. 477, 518–19 (2023) (Barrett, J., concurring) (listing not only regulation outside an agency's "wheelhouse" as a "telltale" indicator, but also discovery "in a long-extant statute [of] an unheralded power to regulate a significant portion of the American economy"). This Rule implicates a politically significant question, given Congress's repeated failure to enact legislation regulating non-competes. *See, e.g.*, Freedom to Compete Act of 2023, S. 379, 118th Cong. (Feb. 9, 2023); Workforce Mobility Act of 2023, H.R. 731, 118th Cong. (Feb. 1, 2023)*.* It is economically significant, affecting 30 million contracts. *See* 89 Fed. Reg. at 38342, 38343, 38467. And it is precisely the type of "unheralded power" that implicates the major questions doctrine. *West Virginia*, 597 U.S. at 724.[6]

*3. Retroactivity.* The FTC's claim that the Rule has "purely prospective effects,"

---

[6] The FTC's attempt to distinguish *West Virginia* based on its "historical use" of Section 6(g) is also misplaced. Opp. 24. FTC cites to the 26 rules it issued in the 1960s and 1970s. Opp. 6. Yet all but one of those rules addressed unfair and deceptive trade practices. The FTC has issued only one solely competition rule (the Men and Boys' Tailored Clothing Rule), which was never enforced or challenged and was later repealed. *See* Maureen K. Ohlhausen & Ben Rossen, Dead End Road: National Petroleum Refiners Association and FTC 'Unfair Methods of Competition' Rulemaking, Truth on the Market (July 13, 2022), https://perma.cc/KX5R-H4B3.

5

Opp. 31, is incorrect because it voids non-compete agreements with current and former Sales Associates for which POV has already performed its end of the bargain. ECF No. 25-1 ("Parr Decl.") ¶ 31. The rule upsets POV's settled expectations and deprives POV of benefits under its existing agreements. *Cf. United States v. Sec. Indus. Bank*, 459 U.S. 70, 82 (1982) (declining to construe statute as invalidating liens retroactively); *see also* Hudson Decl. ¶ 5 (filed concurrently with this brief).

### III. The Rule Impermissibly Circumvents Section 5 Procedural Protections And Overturns Decades Of Antitrust Precedent.

Contrary to the FTC's suggestion, Opp. 14, 16, the power to challenge specific non-compete agreements via adjudication does not automatically confer the broader authority to ban virtually *all* non-competes via rulemaking. This argument elides important differences between adjudicative and rulemaking authority and circumvents both governing antitrust precedent and Section 5's procedural requirements.[7]

The Rule exceeds the FTC's statutory authority because not all non-compete agreements are "unfair methods of competition" in violation of Section 5. The FTC argues that its hypothetical ability to bring "enforcement actions against every user of non-competes" justifies a blanket Rule. Opp. 23. But the FTC has not demonstrated that it would *prevail* in every case, especially given the longstanding precedent under both the Sherman Act and Section 5 permitting non-compete agreements of reasonable

---

[7] "[U]nfair methods of competition" must be "determined in particular instances, upon evidence, in the light of particular competitive conditions" in individual cases with provisions made "for formal complaint, for notice and hearing, for appropriate findings of fact supported by adequate evidence, and for judicial review." *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 533 (1935).

geographic scope and duration. *See, e.g.*, *Snap-On Tools Corp. v. FTC*, 321 F.2d 825, 836–37 (7th Cir. 1963) (Section 5 case holding that "[r]estrictive clauses of this kind are legal unless they are unreasonable as to time or geographic scope"); *Consultants & Designers, Inc. v. Butler Serv. Grp., Inc.*, 720 F.2d 1553, 1560–61 (11th Cir. 1983) (non-compete agreements are not per se illegal under the Sherman Act).[8]

The Rule's blanket ban is especially troubling as applied to POV's agreements, which this District recently upheld. *See Props. of the Villages, Inc. v. Kranz*, 2021 WL 2144178, at *5 (M.D. Fla. May 24, 2021). Considering similar factors as courts applying federal antitrust law, the *Kranz* court held that POV's agreements are reasonable in geographic scope and duration and justified by legitimate business interests. *Id.*; Compl ¶ 41. The FTC has not explained how these agreements nonetheless violate Section 5 now or in the future.

**IV.   Constitutional Avoidance Counsels Against The FTC's Broad Assertion Of Authority To Issue The Rule.**

Congress did not authorize the FTC to bypass Section 5's adjudicatory procedures through Section 6(g)'s vague and ancillary language. If there were any doubt, however, the constitutional avoidance canon supports POV's narrower interpretation. Mot. 27. Adopting POV's interpretation of Section 6(g) avoids non-delegation concerns that arise if the FTC bans nearly all non-compete agreements by "dispens[ing] with th[e] administrative procedure" of Section 5. *Schechter Poultry*, 295

---

[8] The FTC discounts rule-of-reason jurisprudence as limited to the Sherman Act. Opp. 26–27. But courts and the FTC itself routinely rely on Sherman Act jurisprudence in Section 5 cases. *See, e.g.*, *1-800 Contacts, Inc. v. FTC*, 1 F.4th 102, 114 (2d Cir. 2021).

7

U.S. at 533.⁹ Adopting POV's interpretation also avoids Commerce Clause concerns. In an adjudication, the FTC would be required to show that an individual agreement involved or affected interstate commerce. Mot. 25. By banning virtually all non-competes via rulemaking, however, the FTC reaches agreements like POV's that are purely intrastate. *See Solid Waste*, 531 U.S. at 174 (adopting a narrow interpretation "to avoid the significant constitutional and federalism questions"—including under the Commerce Clause—raised by the government's interpretation).

The FTC's reliance on *McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 246 (1980), is misplaced. Opp. 31 (citing *McLain* for the proposition "that Congress may regulate the activities of real estate brokerages"). *McLain* decided whether private antitrust plaintiffs alleged sufficient facts to survive a motion to dismiss, leaving open the possibility that facts at trial could show no interstate commerce connection for the real estate activity at issue. *See id.* at 245. Rather than setting out a broad rule, *McLain* underscores the need to establish a connection to interstate commerce in antitrust cases. Mot. 25.¹⁰ These constitutional questions need not be resolved now, but further support POV's narrower construction of the statute.

## V. POV Will Be Irreparably Harmed Without An Injunction.

POV has established that, absent an injunction, it will need to restructure its

---

⁹ *See also State v. Becerra*, 544 F. Supp. 3d 1241, 1288 (M.D. Fla. 2021) (granting preliminary injunction in case involving non-delegation challenge to agency's authority to issue a rule).

¹⁰ The FTC's Commerce Clause authority is inapposite. The Rule is a labor regulation, not a real estate regulation. POV's agreements do not substantially affect interstate financing, title insurance, or real estate rental; they are narrow labor agreements unconnected to the shipment of goods across state lines. Nor are they a *de minimis* example of intrastate applications; like many other reasonable non-competes, they are limited in geographic scope.

business, reconsider its training, Parr Decl. ¶¶ 13, 25–26, 29, 31, and risk losing customer goodwill, *id.* ¶ 28. These unrebutted facts clearly establish irreparable harm. *Bayou Lawn & Landscape Servs. v. Sec'y of Lab.*, 713 F.3d 1080, 1095 (11th Cir. 2013).[11]

Nor did POV unduly delay bringing this action by filing a complaint six weeks after the Rule's publication and moving for a preliminary injunction just 11 days later. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) (finding irreparable harm despite "eight-week delay in applying for a stay").[12] The FTC cannot cite a single case where a court determined that a plaintiff "delayed" when filing *before* the effective date of a government action.[13] For good reason: although extended, unexplained delay *while suffering harm* suggests that harm is not irreparable, the same cannot be said of proactive efforts to seek relief before a rule goes into effect.[14] Nor can the FTC dispute that POV filed its motion with sufficient time for resolution before the effective date.[15]

POV has also demonstrated that, absent an injunction, it will be harmed. The FTC's speculation that Sales Associates might not leave and compete against POV if the Rule takes effect, Opp. 37, overlooks POV's declaration and the recent *Kranz*

---

[11] POV has proffered evidence that it will rely on core management staff to notify sales associates, and "has already retained counsel to review its existing agreements for compliance." Parr. Decl. ¶ 28. These costs plainly exceed the $27.78 the FTC cites in its brief. Opp. 36; *see also* Hudson Decl. ¶¶ 7–8.
[12] *See also Dream Defs. v. DeSantis*, 559 F. Supp. 3d 1238, 1285 (N.D. Fla. 2021) (finding irreparable harm despite three-month gap between passage of statute and motion because "delay stemmed from the time it took [plaintiff] to consider their options, prepare their lawsuit, and prepare their motion").
[13] *See Wood v. Fla. Dep't of Educ.*, 2024 WL 1536749, *19 n.25 (distinguishing commercial disputes from constitutional claims), *appeal filed* (Apr. 22, 2024).
[14] In the FTC's primary case, *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016), the complained-of harm went on for over five months before plaintiff sought injunctive relief. Conversely, POV sought relief days after filing its complaint and well before the Rule's effective date.
[15] ECF No. 31 at 3 (FTC stating "because the Rule does not become effective until September 4, 2024, Plaintiff will not be meaningfully prejudiced by" the FTC's nine-day extension request).

litigation, which prove that outcome is likely. And 45 Sales Associates have left POV since September 5, 2022. Hudson Decl. ¶ 6.

## VI. The Balance Of The Equities And The Public Interest Support An Injunction Or Stay.

A preliminary injunction would serve "the public interest by maintaining the status quo" without inflicting harm on the FTC. *Ryan*, 2024 WL 3297524, at *14; *see also Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir.1983) ("Maintenance of the status quo is the primary purpose of preliminary injunctive relief."). The FTC focuses solely on what it claims are the Rule's "expected benefits" *nationwide*, Opp. 38, without considering the substantial negative impacts that enforcement would have on POV, Mot. 30, or the fact that there is "no public interest in the perpetuation of unlawful agency action." *Texas v. Biden*, 10 F. 4th 538, 560 (5th Cir. 2021).

Finally, POV in no way abandoned its request for a stay, which it referenced in the motion's request for relief and title. Under the APA, a court may stay a rule's effective date pending review of an agency's action. 5 U.S.C. § 705; *Ryan*, 2024 WL 3297524, at *17. The legal standard is effectively the same as for a preliminary injunction, and POV had no obligation to duplicate its arguments when seeking relief under an identical standard. *See, e.g.*, *Career Colls. & Schs. of Tex. v. Dep't of Energy*, 98 F.4th 220, 233 (5th Cir. 2024). This Court may fashion injunctive relief narrowly to POV or may stay the effective date generally. *Id.* at 255.

## CONCLUSION

The Court should grant POV's Motion in its entirety. ECF No. 25.

                                      Respectfully submitted,

August 9, 2024

| | |
|---|---|
| Patrick M. Muldowney<br>  Florida Bar No. 0978396<br>Meagan L. Martin<br>  Florida Bar No. 89657<br>BAKER & HOSTETLER LLP<br>200 South Orange Avenue<br>Suite 2300<br>Orlando, FL 32802<br>(407) 649-4000<br>pmuldowney@bakerlaw.com<br>mmartin@bakerlaw.com | /s/ *Stacey K. Grigsby*<br>Stacey K. Grigsby (*pro hac vice*)<br>Lauren Willard Zehmer (*pro hac vice*)<br>Matthew J. Glover (*pro hac vice*)<br>Emily A. Vernon (*pro hac vice*)<br>Eli Nachmany (*pro hac vice*)<br>COVINGTON & BURLING LLP<br>850 Tenth Street, NW<br>Washington, DC 20001-4956<br>(202) 662-6000<br>sgrigsby@cov.com<br>lzehmer@cov.com<br>mglover@cov.com<br>evernon@cov.com<br>enachmany@cov.com<br><br>*Counsel for Plaintiff*<br>*Properties of the Villages, Inc.* |

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was electronically filed on August 9, 2024, with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

/s/ *Stacey K. Grigsby*
Stacey K. Grigsby